IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LARRY HUDSON                          §
                                      §
v.                                    §          C.A. NO. C-09-327
                                      §
DON MCANEAR, ET AL.                   §

**OPINION AND ORDER REGARDING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983.  Pending is

Defendants' motion for summary judgment.  (D.E. 63).  Plaintiff filed a response on November

9, 2010, (D.E. 80), and a supplementary response on December 10, 2010.  (D.E. 84).  For the

reasons stated herein, Defendants' motion is hereby granted in part and denied in part.

Plaintiff's failure to protect claim against Defendant Pulido is dismissed for failure to exhaust

administrative remedies.  His excessive force claim against Defendant McAnear will proceed to

trial on the merits.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

After consent by the parties, (D.E. 9, 18), the case was referred to a magistrate judge to conduct

all further proceedings, including entry of final judgment.  (D.E. 22); see also 28 U.S.C.

§ 636(c).

**II.  PROCEDURAL HISTORY**

On November 18, 2009, Plaintiff filed this action.  (D.E. 1).  He filed an amended

complaint on December 17, 2009.  (D.E. 7).  On January 12, 2010, a Spears hearing[1] was held.

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), overruled on other grounds by Neitzke v. Williams, 490 U.S. 319, 324 (1989); see also Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings) (citation omitted).

Defendants filed an answer on March 1, 2010.  (D.E. 17).  On October 8, 2010, they filed a

motion for summary judgment.  (D.E. 63).  Plaintiff filed a response opposing summary

judgment on November 9, 2010.  (D.E. 80).  On December 10, 2010, he filed a supplemental

response to the motion for summary judgment.  (D.E. 84).[2]

### III.  PLAINTIFF'S ALLEGATIONS

The following allegations were made in Plaintiff's original or amended complaints, or at

his Spears hearing:

On October 5, 2008, Plaintiff was in the custody of the Texas Department of Criminal

Justice, Correctional Institutions Division ("TDCJ-CID"), and confined at the McConnell Unit in

Beeville, Texas.  That morning, he reported to the McConnell Unit infirmary to receive insulin to

treat his diabetes.  Defendant McAnear came into the infirmary and questioned Plaintiff as to

why he was there.  Plaintiff told him he was getting his insulin and Defendant McAnear

responded that he would not be getting his insulin and to get out of the infirmary.  Plaintiff then

exited the holding cage.  Defendant McAnear instructed Plaintiff to put his hands behind his

back and handcuffed him.  He then escorted Plaintiff in front of the B-side dining hall, jerking

the handcuffs up as he did so.  Plaintiff complained to Defendant McAnear that he was using

force without provocation.  In response, Defendant McAnear smashed Plaintiff's head into a

pole, gate, fence, and then concrete.  While Plaintiff was lying on the ground, Defendant

McAnear jerked Plaintiff's wrists up with the handcuffs.

As a result of this assault, Plaintiff received lacerations, bruises, and abrasions to his face,

as well as a black eye, and nose bleed.  He also sustained torn ligaments, contusions, sprains,

---

[2] Plaintiff also filed this supplemental response again on January 6, 2011.  (D.E. 86).

limited mobility, and prolonged pain in his right shoulder.  Finally, he suffered mental pain and anguish.

During this assault, Defendant Pulido was present.  Nonetheless, he did not intervene to end the assault, but simply stood aside.

## IV.  SUMMARY JUDGMENT EVIDENCE

All parties agree that in the early morning hours of October 5, 2008, Plaintiff reported to the infirmary to receive medicine for his diabetes.  After that, the parties diverge sharply.

According to a report completed by two nurses working at the time, Plaintiff threw his medication on the ground and left, claiming that he was heading to the chow hall.  (D.E. 63-8, at 17).  The nurses recalled that he re-appeared twenty minutes later, creating a disturbance, and causing security to escort him back to his cell.  Id.  Plaintiff denies that this occurred.

Defendants provided witness statements from nine guards present at various stages of the incident.  (D.E. 63-11, at 7-17; D.E. 63-12, at 4, 7, 10).  Only four of these statements were given by individuals who observed the use of force itself, as opposed to its aftermath.  Id.  Two are from Defendants.  (D.E. 63-11, at 10, 17).  The others are from Defendant McAnear's superior, Sergeant Castillo, and Lieutenant Chester, a guard present during the altercation.  Id. at 7-8, 12.  All four of these statements allege that Plaintiff threatened Defendant McAnear as he was escorting him from the infirmary, and then attempted to escape his control.  Id. at 7-8, 10, 12, 17.  They each further contend that Defendant McAnear was forced to restrain the resisting Plaintiff by placing him beside the wall, and then, after he continued to resist, by "guiding him to the ground," both of which acts he did under the direction and supervision of Sergeant Castillo.  Id.  Defendants have also submitted four photographs of Plaintiff taken after the incident, all of

3

which are too dark and blurry to discern the extent of his injuries.  (D.E. 63-12, at 16).  According to prison records, ten inmates declined to submit witness statements.  Id. at 13.

Shortly after the incident, Plaintiff was given a medical examination by Refugia Campos, a nurse.  (D.E. 63-5, at 6).  She reported that he complained of shoulder pain.  Id.  He had slight swelling on his shoulder, no redness, and pain in the front area of his right shoulder.  Id.  However, Nurse Campos found no evidence of lacerations, contusions, or bruises.  (D.E. 63-8, at 19).  She indicated that he was given Ibuprofen, but spat it out.  Id.  Regarding the psychological effects of the incident, Nurse Campos concluded that Plaintiff had suffered "[n]o alteration in mental status."  (D.E. 63-5, at 24).  The following day, October 6, 2008, Mario De Pau, Jr., whose credentials are listed as a bachelor of science, assessed Plaintiff's mental health and determined that he had no psychological problems.  Id. at 25.  On October 14, 2008, another nurse, Pamela Wagner, indicated that Plaintiff was experiencing shoulder pain, but that he had full mobility.  (D.E. 63-6, at 6).  She concluded: "No medical intervention required."  Id.

On November 11, 2008, Plaintiff was examined by more medical personnel.  (D.E. 63-6, at 14-15).  In a note signed by eight individuals, his shoulder pain was described as "sharp" and his mobility as limited.  Id. at 14.  Plaintiff declined pain medication because of potential negative interactions with his stomach medication.  Id.  On November 12, 2008, Dr. Steven Mercado registered Plaintiff's complaints about shoulder pain and restrictions to his arm movement.  (D.E. 63-5, at 5).  He observed that Plaintiff may have injured a joint or rotator cuff, and prescribed him Tylenol.  Id.  On November 19, 2008, Dr. Julius Danziger reported that "[n]o recent fracture or acute bone pathology can be identified.  Articular relationships are intact.  Soft tissues are within normal limits."  Id. at 4.  Dr. Maximiliano Herrera issued a report on

4

November 24, 2008, describing Plaintiff's x-ray as normal, and opining that he suffered from shoulder pain.  Id. at 3.  He further observed that during the examination he was hysterical and resistant, making it more difficult to evaluate him.  Id.  Dr. Mercado examined x-rays of Plaintiff's shoulder on December 23, 2008, and found them normal.  (D.E. 63-4, at 24).  On December 24, 2008, a note signed by eight medical employees advised that Plaintiff see a doctor for further evaluation and begin to take Tylenol PM.  (D.E. 63-6, at 22).  Nurse Wagner again diagnosed Plaintiff with pain in his right shoulder on December 30, 2008.  Id. at 25.  On January 20, 2009, Dr. Karl Stein noted that Plaintiff had "limited flexion and extension of [his] shoulder," that his elevation was limited, and that he had tenderness.  Id. at 28.  Dr. Michael Hanley observed on March 18, 2009 that Plaintiff had "injured his right shoulder" during the incident and continued to suffer from pain in that shoulder.  (D.E. 84-1, at 5).  He diagnosed Plaintiff with right shoulder strain and contusion, and recommended that the injury be treated conservatively and that Plaintiff undergo therapy to improve his range of motion.  Id.

Plaintiff visited a physical therapist repeatedly between May 8 and July 21, 2009.  Id. at 7-30; (D.E. 84-2, at 1-20).  James Stubbs, the physical therapist, believed that Plaintiff had suffered an injury to his shoulder and was experiencing significant pain and lack of mobility. See, e.g., (D.E. 84-1, at 9) (determining that Plaintiff was suffering from an increasing amount of pain in his shoulder); Id. at 22 (noting that Plaintiff was "improving his range in all planes"). Mr. Stubbs implemented an extensive course of physical therapy with mixed results.  Id. at 7-30; (D.E. 84-2, at 1-20).

On October 14, 2008, a disciplinary case was filed against Plaintiff for his conduct on October 5, 2008.  (D.E. 63-7, at 6).  He was accused of threatening to attack Defendant McAnear

and attempting to escape his control as he was being escorted through the prison, creating "a breach of institutional security." Id.  He was given a reprimand and punished with a loss of thirty days of recreation and commissary privileges.  Id. at 12.  That case was later overturned and expunged, apparently because officials violated TDCJ policy and failed to take Plaintiff's defense statement, or conduct a mental health examination.  Id. at 5; (D.E. 63-10, at 7).

On October 19, 2008, Plaintiff filed a grievance concerning the October 5, 2008 incident. (D.E. 63-7, at 4).  In addition to elaborating his claim of excessive force against Defendant McAnear, Plaintiff noted that a female officer witnessed the incident and requested that she be investigated.  (D.E. 63-7, at 4-5).  In his response, Warden Crites indicated that the excessive force complaint was found lacking in supporting evidence and forwarded to the Office of the Inspector General for review.  Id. at 5.  The Office of the Inspector General also declined to open an investigation in the matter.  (D.E. 63-10, at 7).

## V.  DISCUSSION

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies with respect to his failure to protect claim, and that his excessive force claim is barred by official and qualified immunity.  (D.E. 63, at 4).

**A.     The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

6

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.     Plaintiff Failed To Exhaust Administrative Remedies With Respect To His Failure To Protect Claim Against Defendant Pulido.**

Defendants move to dismiss Plaintiff's claim of failure to protect against Defendant Pulido on the grounds that he has failed to exhaust his administrate remedies as required by 42

U.S.C. § 1997e.  (D.E. 63, at 4).

In the Prison Litigation Reform Act ("PLRA"), Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  However, an inmate's failure to exhaust is an affirmative defense that must be raised by defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007).

The TDCJ currently provides a two-step procedure for presenting administrative grievances.[3]  A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order

---

[3] Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)), overruled by implication on other grounds by Bock, 549 U.S. at 199.  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Id.  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.  Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director.  Id.

to exhaust his administrative remedies.  See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358).

The purpose of the exhaustion requirement is to alert TDCJ officials to problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at 94.  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

Defendants contend that Plaintiff never filed a grievance against Defendant Pulido, nor complained in any of his grievances that a second guard failed to intervene, and that he therefore failed to exhaust administrative remedies with respect to that claim.  (D.E. 63, at 5).  Plaintiff responds that he was not required to name Defendant Pulido specifically and that the purposes of the exhaustion requirement were met because TDCJ had sufficient notice of Defendant Pulido's actions to investigate the incident and resolve any complaints internally.  (D.E. 84, at 6-7).

In Johnson, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  385 F.3d at 516 (citations omitted); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).  For example, a complaint about a correctional officer should identify a specific person, whereas a complaint about a prison condition might not need to identify any individual.  Johnson, 385 F.3d at 517; Wilbert, 647 F. Supp. 2d at 766 (citation omitted).

Here, Plaintiff's claim against Defendant Pulido concerns his conduct on October 5, 2008. (D.E. 1, at 4). He has not contested the assertion that no grievances were ever filed against Defendant Pulido. Nor has he presented any reason for why Defendant Pulido was not named in his grievances. Indeed, it is particularly difficult to imagine any such compelling reason in light of Plaintiff's testimony at his <u>Spears</u> hearing, where he described at great length Defendant Pulido's appearance and demeanor during the incident. Plaintiff was clearly well aware of the role Defendant Pulido played, or did not play, in failing to intervene in the alleged assault as soon as it occurred.

Plaintiff submits that TDCJ had sufficient information from his grievances to investigate the actions of other officers present during the altercation. (D.E. 84, at 7). This contention is unsupported. Based on his grievances, officials would have had grounds only to investigate Defendant McAnear's use of force; they would have had no reason to suppose that any fellow officers observed the attack and stood aside. Indeed, the McConnell Unit conducted exactly the sort of investigation that one would expect under the circumstances: they sought to obtain witness statements from every individual in the vicinity during the episode. (D.E. 63-11, at 7-8, 10-17).

Finally, Plaintiff demonstrated in his grievances that he was cognizant of how to call prison authorities' attention to possible persons of interest. In his grievance against Defendant McAnear, he noted that a female officer witnessed the incident and requested that she be investigated. (D.E. 63-7, at 4-5).[4] Plaintiff could easily have made the same observation

---

[4] Plaintiff even referred to this woman as "Officer Jane Doe," indicating that any lack of familiarity with Defendant Pulido would not have been an impediment to citing him in his grievances. (D.E. 84, at 27).

regarding Defendant Pulido, not to mention describing his conduct as he described it at his Spears hearing. He did not do so. As a result, prison officials were unable to investigate his complaint against Defendant Pulido and attempt to resolve it internally. See Johnson, 385 F.3d at 517 (citing with approval the Sixth Circuit's holding in Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) that "a grievance specifically complaining of a beating at the hands of one guard did not suffice to exhaust a failure-to-protect claim against another guard, not mentioned in the grievance, who stood by and watched").

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the PLRA. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam), overruled by implication on other grounds by Bock, 549 U.S. at 213 (citing McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992)). For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. Id.; accord Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir. 1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. Underwood, 151 F.3d at 296; accord Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

Plaintiff has not cited any extraordinary circumstances. A review of the record does not reveal any. Accordingly, Plaintiff's claim against Defendant Pulido for failure to protect is dismissed for failure to exhaust administrative remedies.

**C.    To The Extent Plaintiff Is Suing Defendant McAnear In His Official Capacity, His Claim Is Barred By Eleventh Amendment Immunity.**

Defendant McAnear asserts that Plaintiff is barred by the Eleventh Amendment from suing him in his official capacity.  (D.E. 63, at 15).  The Eleventh Amendment is a jurisdictional bar to suits brought in federal court against the State.  U.S. Const. Amend. XI.  The immunity afforded by the Eleventh Amendment extends to the State's agencies and departments, and, in the absence of waiver, applies regardless of the nature of relief sought.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  The State of Texas has not waived immunity in this case, and, because suits against state officials in their official capacities are, in effect, asserted against the state itself, such suits are also barred by the Eleventh Amendment.  Howlett By and Through Howlett v. Rose, 496 U.S. 356, 365-66 (1990).

It is not clear why Defendant McAnear believes that he is being sued in his official capacity, given that Plaintiff clearly indicated in his complaint that he was suing Defendants in their individual capacities.  (D.E. 1, at 1).  Nevertheless, to the extent Plaintiff could be construed as suing Defendant McAnear in his official capacity, that claim is necessarily against the State and, as such, is barred by the Eleventh Amendment.

**D.    Defendant McAnear Is Not Entitled To Qualified Immunity.**

Defendant McAnear argues that qualified immunity protects him from this action.  (D.E. 63, at 3-8).  He claims that Plaintiff's injuries were de minimis and that he used the minimum amount of force necessary to restrain him.  Id. at 6-16.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, __, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "First, he must claim that the defendants committed a constitutional violation under current law."  Id. (citations omitted).  "Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Id. (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  Pearson, 555 U.S. at __, 129 S. Ct. at 818 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

**1.      Step 1 – constitutional violation.**

To prevail on a claim of excessive force, Plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than de minimis.  See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992) (citations omitted); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably

perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response.  <u>Gomez</u>, 163 F.3d at 923.

        **a)**       **Plaintiff's injuries were not <u>de minimis</u>.**

The Fifth Circuit has emphasized that "*some* physical injury is an indispensable element of an Eighth Amendment excessive force claim."  <u>Id.</u> (emphasis in original) (citations omitted). To support an excessive force claim, "a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor."  <u>Id.</u> at 924.  A <u>de minimis</u> use of force is not constitutionally recognizable as long as it is not "repugnant to the conscience of mankind." <u>Siglar</u>, 112 F.3d at 193 (quoting <u>Hudson</u>, 503 U.S. at 10).  In <u>Siglar</u>, the Fifth Circuit found <u>de minimis</u> a plaintiff's injuries consisting of a sore, bruised ear that lasted three days.  <u>Id.</u>; <u>see also</u> <u>Luong v. Hatt</u>, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (holding that "[a] physical injury is ... [a] condition requiring treatment by a medical care professional").

Defendant McAnear's argument that Plaintiff's injuries were <u>de minimis</u> finds no support from the record.  His medical records are replete with evidence that Plaintiff suffered "*some physical injury.*"  <u>Gomez</u>, 163 F.3d at 923 (emphasis in original).  In particular, there is ample support for Plaintiff's contention that his shoulder was injured during the use of force.  First, he was "prescribed a strong pain medication" for a week to treat the pain resulting from the altercation.  (D.E. 63-4, at 18) (TDCJ official's notes on a grievance response); <u>see also</u> (D.E. 63-5, at 5) (Dr. Mercado indicating that he was prescribing Plaintiff Tylenol for his pain); (D.E. 63-6, at 22) (eight medical employees of TDCJ suggesting that Plaintiff begin taking Tylenol PM).  These repeated determinations that Plaintiff required medication to treat his pain after the

altercation are evidence that he did in fact suffer an injury on October 5, 2008.  Likewise, the fact that the report signed by TDCJ staff members advised that a doctor be consulted regarding Plaintiff's condition indicates that he suffered more than a de minimis injury.  See Luong, 979 F. Supp. at 486.

Furthermore, Defendant McAnear's insistence that Plaintiff's claim to having experienced "unverifiable subjective pain ... runs contrary to every bit of medical evidence before the court" is equally without merit.  (D.E. 63, at 7).  In addition to the prescribed pain medication, several medical professionals signaled that they found these claims of pain plausible.  Most compellingly, two medical doctors indicated that they believed Plaintiff was experiencing shoulder pain after the incident.  (D.E. 63-5, at 3; D.E. 84-1, at 5).  In addition, Defendant McAnear has pointed to no medical reports reflecting a professional opinion that Plaintiff's consistent expressions of pain were lacking in credibility.  Consequently, there is clearly sufficient evidence to suggest that Defendant McAnear's use of force against him generated some degree of prolonged pain, which in turn strongly supports the proposition that Plaintiff suffered an injury that cannot be characterized as de minimis.

There is also documentation in the record to support Plaintiff's belief that he suffered some kind of concrete injury–such as a tear or sprain–to a joint, rotator cuff, or some other part of his shoulder.  Dr. Mercado thought that such an injury may have occurred.  (D.E. 63-5, at 5).  Dr. Hanley went so far as to diagnose Plaintiff with right shoulder strain and contusion.  (D.E. 84-1, at 5).  Additionally, there is evidence that Plaintiff has endured significant constrictions to shoulder movement in the aftermath of the incident.  Dr. Stein noted such limitation, and they are greatly reinforced in numerous reports by Mr. Stubbs concerning Plaintiff's extensive course of

physical therapy.  (D.E. 63-6, at 28; D.E. 84-1, at 7-30; D.E. 84-2, at 1-20).  The fact that medical professionals found that Plaintiff's freedom of motion had been significantly hampered following the altercation is persuasive evidence that he suffered an injury to his shoulder.

Contrary to Defendants' view, Plaintiff's conviction that he suffered an injury during his restraint by Defendant McAnear is not a "stor[y] ... blatantly contradicted by the record."  (D.E. 63, at 7) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).  Rather, it is the account more soundly based on the evidence than is Defendants' assertion that his injuries were only de minimis.  They point to a scattered handful of opinions discounting Plaintiff's injuries.  Several of these consist of medical opinions excluding various possible injuries, such as fractures or other bone damage discoverable through x-rays.  (D.E. 63-4, at 24; 63-5, at 3-4).  Far from justifying their conclusion, these reports are largely irrelevant, as Plaintiff never claimed to have sustained bone damage.  At any rate, they shed no light on whether the incident caused Plaintiff lasting pain, muscle injury, or restrictions to his mobility.

The other evidence upon which Defendants rely is comprised of opinions in tension with those confirming Plaintiff's complaints.  These appear to be limited to reports authored by two nurses.  Nurse Campos found no contusions and Nurse Wagner determined that Plaintiff had full mobility and that no further medical care was necessary.  (D.E. 63-6, at 6; 63-8, at 19).  These opinions are insufficient to demonstrate that Plaintiff's injuries were de minimis.  For one thing, they are contradicted by the bulk of the evidence, including that of several medical doctors and other medical professionals.  See Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006) (discounting physician's finding of de minimis injuries where it was outweighed by balance of medical record).  For another, they do not discount all of Plaintiff's complaints, including, most

obviously, his insistence that he suffered prolonged pain.

In sum, viewing controverted evidence in the light most favorable to Plaintiff, his injuries rose above the de minimis level and Defendants are not entitled to summary judgment on that ground.[5]

### b) There is an issue of material fact as to whether Defendant McAnear committed a constitutional violation.

Turning to the question of whether a constitutional violation occurred, the factors enumerated by the Supreme Court in Hudson generally weigh against a finding of summary judgment.  See 503 U.S. at 7.  First, there is sufficient evidence in the record to support Plaintiff's contention that Defendant McAnear inflicted on him serious and prolonged injuries. Second, the parties are in sharp dispute on the need for the application of force.  Plaintiff maintains that Defendant McAnear resorted to force with no cause whatsoever; Defendants, on the other hand, submit that he was making a disturbance and sought to remove himself from Defendant McAnear's control while being escorted back to his cell.  (D.E. 63, at 7-9). Defendants have filed several witness statements in rough accordance with their version of events.  (D.E. 63-11, at 7-8, 10-17).

Nevertheless, these accounts are insufficient to justify dismissal.  As an initial matter, to the extent that the occurrence vel non of a constitutional violation hinges on the credibility of the witnesses, that is a question properly reserved for the jury, not for the Court at the summary

---

[5] Defendants appear to interchangeably refer to de minimis injury and de minimis use of force, while focusing their argument on the former point.  (D.E. 63, at 6).  These are two separate concepts.  See Brown, 472 F.3d at 386 n.1.  Nevertheless, the evidence surveyed above, particularly the extent of Plaintiff's injuries and TDCJ officials' decision to categorize the incident as a "major use of force," persuasively shows that neither the injuries nor the use of force can be regarded as de minimis at the summary judgment stage.

judgment stage.  See Davis v. Alaska, 415 U.S. 308, 317 (1974) (noting that "the jury [is] sole judge of the credibility of a witness").  More importantly, even if the statements offered by Defendants from those at the scene are accurate, they do not resolve the dispute or establish that no constitutional violation took place.  For they do not address the true crux of the debate, which is whether the degree of force was appropriate under the circumstances.  None of the witnesses describe the events in enough detail to determine whether Plaintiff's conduct, whatever it was, justified Defendant McAnear in employing sufficient force to inflict the injuries reflected by the medical evidence.

Indeed, the statements given by the officers who actually witnessed Defendant McAnear's actions do not describe a use of force that seems capable of giving rise to the injuries described in the medical record.  They all claim that Plaintiff, while in handcuffs, was placed against the fence and then, after further resistence, "guided" to the floor by Defendant McAnear. (D.E. 63-11, at 7-8, 10, 12, 17).  If Plaintiff sustained the shoulder injuries suggested by the evidence, these descriptions insufficiently capture the October 5, 2008 incident.  See generally Brown, 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Likewise, if the use of force was as relatively minimal and restrained as the witness statements claim, it is not clear why officials regarded it as a "*major* use of force," why it was deemed necessary to take photographs of Plaintiff's body, and why everyone concerned thought

18

it wise to give Plaintiff a complete medical examination.  (D.E. 63-11, at 8, 12, 13, 16, 17; D.E. 63-12, at 2, 4, 7, 10, 16).  These decisions all intimate that more force was used against Plaintiff than is apparent from the officers' statements.

Moreover, even if Plaintiff did in fact make a disturbance at the infirmary, and even if he did seek to escape from Defendant McAnear's control, there is still a genuine issue of material fact as to whether it was reasonable of Defendant McAnear to restrain him so forcefully as to cause Plaintiff's lingering shoulder injuries, or whether he did so with malicious or sadistic intent.  This question hinges on a more precise account by Defendant of the vigorousness of Plaintiff's resistance and a more detailed description of the level of force Defendant McAnear brought to bear in response.  In turn, those accounts will require further elaboration of the facts and credibility determinations.  See Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993) (where excessive force claim by inmate turns on choosing between competing narratives by the plaintiff and defendant, disposition is "dependent on a fact-sensitive inquiry and credibility determinations" and "summary judgment is not a proper vehicle for the resolution of these disputed issues").

Finally, the efforts here to moderate the intensity of the force used, a factor addressed in Hudson, do not compel summary judgment.  503 U.S. at 7.  Defendant McAnear insists that he tempered the force by "apply[ing] varying types of force, in stages, and continuing only so long as [Plaintiff] continued to struggle."  (D.E. 63, at 12).  There are two principal reasons why this argument fails.  First, it is equally dependent on facts in dispute and thus equally unsuited to summary judgment.  Second, it does not address the central question, which is not whether Defendant McAnear attempted a less forceful alternative to bringing Plaintiff to the ground, but

19

rather whether he sought to moderate the amount of force used upon him once he was already on the ground, the point at which the injuries were presumably inflicted.  As a result, there remains a genuine issue of material fact as to whether Defendant McAnear sought to temper the degree of force he employed in restraining Plaintiff.

Accordingly, Plaintiff's allegations satisfactorily state a constitutional violation and he has discharged his burden under the first prong of the qualified immunity analysis.[6]

### 2.      Step 2 – objective reasonableness.

When assessing objective reasonableness, it is necessary to articulate the asserted constitutional right more specifically.  Thompson v. Upshur County, Tex., 245 F.3d 447, 460 (5th Cir. 2001).  Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution."  Id. (citation omitted).  For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Under the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

---

[6] Defendants argue as separate issues of law that Plaintiff's claims fail pursuant to the PLRA, the jurisprudence that defines excessive force, and the doctrine of qualified immunity.  (D.E. 63, at 2).  They acknowledge that these questions are related.  Id. at 14.  The Court considers the foregoing analysis to demonstrate that summary judgment is not warranted on any of these grounds.  Plaintiff's allegations, and the medical record, are sufficient to defeat Defendants' summary judgment argument that his injuries are de minimis for purposes of either the PLRA or qualified immunity.  Likewise, his allegations sufficiently state a claim of excessive force with reference to case law elaborating excessive force generally, as well as case law focused specifically on qualified immunity.

unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603 (1999)).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Creighton, 483 U.S. at 641.  Moreover, prison officials "are entitled to wide-ranging deference" in handling disturbances with inmates.  Baldwin v. Stalder, 137 F.3d 836, 840 (5th Cir. 1998).  The purpose of the "clearly established law" requirement is to avoid retroactive application of "newly created legal standards" to state actors who had no reason to know they were exposing themselves to liability.  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 928 (5th Cir. 1992) (citing Harlow, 457 U.S. at 819).

A prisoner's constitutional right to be free from the malicious and sadistic use of force was clearly established for purposes of the second prong of the qualified immunity analysis at the time of Defendant McAnear's conduct.  See, e.g., Hudson, 503 U.S. at 4 ("the use of excessive physical force against a prisoner may constitute cruel and unusual punishment").  The medical evidence indicates that Plaintiff sustained significant injuries from the use of force on October 5, 2008.  The witness statements submitted by Defendants do not fully account for these injuries, nor do they give a complete picture of Defendant McAnear's actions.  If Plaintiff's version of events is accurate, Defendant McAnear assaulted him with extreme force and no provocation.  Such behavior would constitute malicious and sadistic force and would thus be objectively unreasonable under clearly established law.  See Siglar, 112 F.3d at 193.  In the absence of evidence in the record to rebut Plaintiff's account, and in light of medical evidence speaking to the severity of the force employed, his story must be accepted for purposes of the motion for summary judgment.  Finally, Defendant McAnear has pointed to no "newly created legal standard" upon which Plaintiff's claim is based, and the Court has not found any.  Mouille,

977 F.2d at 928 (citation omitted).

Defendant McAnear argues that his conduct cannot be considered objectively unreasonable because he was following the instructions of his supervisor, Sergeant Castillo, while subduing Plaintiff.  (D.E. 63, at 14).  Plaintiff's allegations must be read to contradict this claim, as he has never mentioned Sergeant Castillo's involvement in the incident, while taking care to describe the role of every other officer he understood to be present and observing.  If Sergeant Castillo's supervision at the scene did in fact render Defendant McAnear's conduct more reasonable, it would only have done so because Defendants' account is credible and Plaintiff's is not, and that is a question for the trier of fact.

Furthermore, even if Defendant McAnear was simply obeying the demands of his supervising officer, that fact, while potentially relevant to the qualified immunity analysis, would not entitle him to such immunity.  See Vela v. White, 703 F.2d 147, 152 (5th Cir. 1983) (per curiam) (upholding and adopting district court ruling that conducted detailed analysis of police officer's reasonableness in executing arrest ordered by superior to determine availability of qualified immunity); see also Bigford v. Taylor, 896 F.2d 972, 974 (5th Cir. 1990) (correcting district court that found a defendant entitled to qualified immunity because he "merely followed the orders of his superiors" and instead conducting inquiry into the objective reasonableness of his actions in light of clearly established law); Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981) (jury could properly find that jail official in pretrial detainee civil rights case lost his qualified immunity despite following superior's orders where he "knew or should have known that he was violating plaintiffs' constitutional rights or that he had a malicious intention to deprive the plaintiffs of their constitutional rights or to cause them other injuries").

22

At any rate, Defendant McAnear does not contend that Sergeant Castillo instructed him to smash Plaintiff's head against various objects and then inflict a serious injury to his shoulder, the allegations that form the basis of this action.  He likewise does not argue that such actions would have been objectively reasonable so long as they were ordered by his commanding officer.  On the contrary, his position regarding the reasonableness of following Sergeant Castillo's instructions is inextricably tied up with his insistence that he employed a minimal use of force, a view contradicted by Plaintiff's statements and not sufficiently substantiated by the witness statements or medical evidence.  Consequently, Defendant McAnear is not entitled to summary judgment on the ground that he was following orders and was thus acting objectively reasonable.

As with the question of whether Defendant McAnear committed a constitutional violation, therefore, the question of whether Defendant McAnear acted objectively unreasonable depends on a fuller development of the facts and a credibility determination as to whose story is more believable.  Accordingly, there is a genuine issue of material fact as to whether Defendant McAnear's actions were objectively reasonable and Plaintiff has satisfied his burden on the second prong of the qualified immunity inquiry.

## VI.  CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment, (D.E. 63), is granted in part and denied in part.  Thus, Plaintiff's claim against Defendant Pulido for failure to protect is dismissed for failure to exhaust administrative remedies.  However, his claim against Defendant McAnear for excessive force will proceed to trial.

ORDERED this 10th day of January 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE